BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
eryan@bffb.com
Patricia N. Syverson (203111)
psyverson@bffb.com
2325 E. Camelback Road, #300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

BOODELL & DOMANSKIS, LLC
Stewart M. Weltman (*To Be Admitted Pro Hac Vice*)
sweltman@boodlaw.com
Max A. Stein, (*To Be Admitted Pro Hac Vice*)
mstein@boodlaw.com
353 North Clark St, Suite 1800,
Chicago, Illinois 60654
Telephone: (312) 938-1670

GOLDMAN SCARLATO & PENNY P.C.
Brian D. Penny (*To Be Admitted Pro Hac Vice*)
penny@gskplaw.com
Laura K. Mummert (*To Be Admitted Pro Hac Vice*)
mummert@gskplaw.com
101 East Lancaster Ave., Suite 204
Wayne, Pennsylvania 19087
Telephone: (484) 342-0700

*Additional Attorneys Appear on Signature Page*

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA CORBETT, On Behalf of Herself and All Others Similarly Situated, | Case No.: |
| | **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | 1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; |
| v. | 2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and |
| PHARMAVITE LLC, a California limited liability company, | 3. VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §349 |
| Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff Laura Corbett brings this action on behalf of herself and all others similarly situated against Defendant Pharmavite LLC, and states:

**NATURE OF ACTION**

1.     Pharmavite manufactures, markets, sells and distributes Vitamin E dietary supplements under its brand name Nature Made.[1]  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Pharmavite uniformly claims that its Vitamin E products will help maintain a healthy heart.  On each and every bottle of Vitamin E, Pharmavite represents that the Products "help[] maintain a healthy heart" (hereinafter "the heart health representation").  This is the only benefit representation made on the Products' front labels.   In truth, Pharmavite's Vitamin E products do not help maintain a healthy heart.

2.     Consumers' health concerns motivate the purchase and consumption of dietary supplements such as Defendant's vitamin E supplements.  By prominently but falsely stating that its Vitamin E products provide heart health benefits, Defendant plays upon those concerns to lure consumers to purchase its products.

3.     Defendant's marketing and sale of its Vitamin E products is directed to the general population as opposed to those extremely rare few that have what is called "frank Vitamin E deficiency."

4.     Experts in the field recognize that the measure of whether a heart is healthy is that it is free from cardiovascular disease.  Thus, experts in the field view the test for whether a substance, such as Vitamin E supplements, provide any heart health benefits is whether the substance helps prevent cardiovascular disease ("CVD").[2]  As more fully set forth below, large scale randomized controlled clinical

---

[1] (1) Natural Vitamin E 400 IU d-Alpha; (2) Vitamin E 400 IU dl Alpha; (3) Vitamin E 400 I.U. Water Solubilized; (4) Vitamin E 1000 IU dl Alpha; and (5) Vitamin E 200 IU dl Alpha (collectively "the Products" or "Vitamin E").

[2] For example, the American Heart Association defines cardiovascular health as the absence of disease.http://www.heart.org/idc/groups/heartpublic/@wcm/@sop/@smd/documents/dow

trials ("RCTs") have conclusively shown that Vitamin E supplements such as those sold by Defendant do not prevent CVD and thus the consensus in the scientific community is that Vitamin E supplements do not provide any heart health benefits and most certainly do not help maintain a healthy heart.

5. Thus, even though Plaintiff is not asserting that Defendant is making a false disease claim as that is defined in the FDA Act, and instead is asserting that Defendant's Products helps maintain a healthy heart is a false structure function claim, the evidence will show that, as a matter of science and fact, the measure of whether Defendant's structure function claim is truthful or not is determined by whether it prevents CVD – which the evidence conclusively shows that it does not.

6. Another measure of whether Vitamin E supplements, such as those sold by Defendant, provide any overall long term health benefits, including heart health, is a measure known as "all-cause mortality." This measure is used to measure the rate of death in people who take a substance, in this case Vitamin E supplements, versus placebo.

7. In the last few years several large scale meta-analyses have been conducted and reported which address the effect, or lack thereof, of Vitamin E supplementation on all-cause mortality.

8. While none of these studies have found Vitamin E supplementation to benefit all-cause mortality, several well-conducted and highly regarded meta-analyses have concluded that Vitamin E supplementation actually poses a risk of harm because people taking Vitamin E supplements were found to die at a higher rate than those who did not take supplements. The authors of these studies have

---

nloadable/ucm_319831.pdf. Similarly, the Columbia University Medical web site (http://www.cumc.columbia.edu/cbch/), the Mayo Clinic web site (http://www.mayoclinic.org/cardiovascular-disease-rst/cardioheartclinic.html), and University of Chicago (http://www.ucmc150.uchicago.edu/cardio/) web sites all define cardiovascular health in terms of the prevention of CVD.

- 3 -

concluded that Vitamin E supplements should not be taken by the general population. See, e.g., Bjelakovic G, Nikolova D, Gluud C., *Meta-Regression Analyses, Meta-Analyses, and Trial Sequential Analyses of the Effects of Supplementation, with Beta-Carotene, Vitamin A, and Vitamin E Singly or in Different Combinations on All-Cause Mortality: Do We Have Evidence for Lack of Harm?* PLOS ONE September 2013: Vol. 8, Issue 9, e74558.

9.    Other meta-analyses have concluded that although Vitamin E supplements may not increase the rate of all-cause mortality, nonetheless Vitamin E supplements have been definitively proven to have no effect on all-cause mortality, meaning that Vitamin E supplements do not contribute to overall health, including heart health.  In fact, the authors of these studies, like those that authored the studies that concluded Vitamin E supplements pose risks of harm, have uniformly found that Vitamin E supplements should not be taken by the general population because they have been definitively proven not to provide health benefits. See, e.g., Curtis et al., "Vitamin E Supplementation and Mortality in Healthy People: A Meta-Analysis of Randomized Controlled Trials", Cardiovasc Drugs Ther (2014) 28:563-573 ("The results provide no support for recommending vitamin e supplementation to healthy adults.").

10.   In a similar vein, The U.S. Preventative Services Task Force, an entity of experts in the field[3] who reviewed the scientific evidence regarding vitamin E supplements, concluded "with moderate certainty that *the net benefit of vitamin E supplementation is zero.*" *Id*. at 562 (emphasis added).

11.   The RDA (recommended daily allowance) of Vitamin E, from any

_____

[3] Created by Congress in 1984, "the U.S. Preventive Services Task Force (USPSTF or Task Force) is an independent group of national experts in prevention and evidence-based medicine that works to improve the health of all Americans by making evidence-based recommendations about clinical preventive services such as screenings, counseling services, or preventive medications." http://www.ahrq.gov/professionals/clinicians-providers/guidelines-recommendations/uspstf/index.html

source, is 15 mg.  This RDA was established in 2000 by the Institute of Mediciine based upon the educated guesstimates of experts in the field.

12.     Thus, according to experts in the field, there is no need for more than 15 mg of vitamin E per day.  Even then Vitamin E deficiency is extremely rare, is almost never caused by a poor diet, and no deficiency symptoms have been found in healthy people who obtain less than the RDA of Vitamin E from their diets. [4]

13.     Defendant sells Vitamin E supplements in mega-dose amounts – 200iu, 400iu and 1000iu.

14.     Defendant employs the false lure of heart health benefits, prominently displayed on the front of its labels, to, at best, fraudulently induce persons to purchase mega-doses of superfluous Vitamin E supplements – well in excess of what, if any, supplementation is needed – and, at worst, is fraudulently inducing consumers to purchase mega-dose Vitamin E supplements that are worthless, pose the risk of harm through increased all-cause mortality or both.

15.     Consumers' damages are easily calculated – damages are either (1) the full retail purchase price because the mega-dose supplements they purchased are worthless and potentially harmful, or (2) the full retail purchase price minus the additional amount of Vitamin E that is needed to fill any purported  alleged gap between the average intake of 9.7 mg per day and  the 15 mg RDA (again, with the understanding that the overwhelming consensus in the scientific community is that Vitamin E supplements should not and need not be taken at all).   Retail pricing information sufficient to provide economically reliable estimates of the average retail prices paid by consumers for Defendant's Vitamin E product are readily obtained

---

[4] The average amount of vitamin E consumed on a daily basis from diet is deemed by one survey to be 9.7 mg.  Thus, at best, consumers only need an additional 5.3 mg of vitamin E to meet the 15 mg RDA.  And even then, the evidence is that this "gap filling" amount is not needed, since there are no known negative health consequences that have occurred as a result of the average intake being less than the 15mg.

from Nielsen.

16.   By law, the FDA does not and cannot regulate the pre-market approval of health benefit statements about dietary supplements such as Defendant's Vitamin E products.   Instead, it is the manufacturer's responsibility to ensure that the statement "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function…." and that the manufacturer "has substantiation that such statement is truthful and not misleading."   21 U.S.C. 343 (r).  As more fully set forth herein, the statement that Defendant's Vitamin E supplements "help[] maintain a healthy heart" does not have a "documented mechanism by which" it acts to provide any  heart health benefits.  And Pharmavite does not and cannot have substantiation that its heart health statements are truthful and not misleading because the scientific evidence is overwhelming that Vitamin E supplements do not provide any heart health structure function benefits.  In short, Vitamin E supplements have been conclusively proven to not "help maintain a healthy heart" and Defendant's representation in this regard is false.

17.   That the false heart health representation is the only health representation on the front label and is prominently displayed on the lower right hand corner of that label (where consumer's eyes come to rest) was at least a material influence on consumers' purchases of Defendant's products is reflected in the basics of marketing and literature, including consumer surveys/studies.   The literature shows that most people do not read the backs of labels and that it is readily recognized as a basic tenet of marketing that the front of the label is the primary source of information for consumers about a product just prior to purchase.

18.   With regard to the science, in testing whether Vitamin E supplements provided any heart health benefits, the hypothesis was that if Vitamin E supplements provided any heart health benefits, be they structure function or otherwise, that would warrant people paying for and taking Vitamin E supplements, such benefits would

be seen in large scale long-term RCTs studying whether Vitamin E supplementation would help prevent or its related symptoms.

19.     Thus, large scale studies were conducted to test the hypothesis of whether, when taken over a long term, Vitamin E supplements would result in less incidence of heart health problems such as CVD.  While the endpoints of the studies were the prevention of CVD and its related conditions, if Vitamin E supplements actually provided any meaningful structure function benefits to the heart (e.g. benefits that would justify the purchasing and taking of a Vitamin E supplement),  it would result in the Vitamin E supplements showing that they prevented CVD or its related conditions.

20.     The results of these large scale RCTs demonstrated that Vitamin E supplements, like Pharmavite's Products, do not provide any cardiovascular or heart health benefits.  Thus, the sole "active" ingredient in the Products, Vitamin E, does not work as represented by Pharmavite in that it does not help maintain a healthy heart.    Pharmavite's  structure  function  heart  health  representation  is  false, misleading, and reasonably likely to deceive the public.

21.     The  overwhelming  consensus  in  the  scientific  community  is  that Vitamin E supplementation  provides  no  cardiovascular  or  heart  health  benefits. Thus, major  medical groups including the American Heart Association (AHA) and Mayo Clinic do not recommend that they be taken for heart health.  Likewise, a panel of experts commissioned by the U.S. Preventive Services Task Force[5] has concluded that Vitamin E  supplements  have  been  proven  to  lack  a  benefit  with  regard  to cardiovascular disease and thus with heart health.

22.     Pharmavite  has  employed  numerous  media  to  convey  its  uniform, deceptive  heart  health  representation  to  consumers,  including  magazines,

_____

[5] The U.S. PSTF is a volunteer panel of national experts convened by the Agency for Healthcare Research and Quality.

newspapers, the internet, social media websites, and, importantly, on the front of the Vitamin E Products' packaging and labeling where it cannot be missed by consumers.

23.   As a result of Pharmavite's deceptive heart health representation, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

24.   Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased the Vitamin E Products, to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.  Based on violations of California state unfair competition laws and other similar state consumer fraud laws, Plaintiff seeks injunctive and monetary relief for consumers who purchased the Vitamin E Products.

**JURISDICTION AND VENUE**

25.   This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). Defendant has admitted its sales of Vitamin E bearing the "helps maintain a healthy heart" statement exceed $5,000,000.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Pharmavite.

26.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this district and because Pharmavite:

- is headquartered in this district;

- is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution, and sale of its Products in this district; and

- does substantial business in this district

1

**PARTIES**

2          27.    Plaintiff Laura Corbett is a police officer in the New York Police

3   Department (NYPD) and currently resides in Comack, New York.  For several years

4   until approximately 1 ½ years ago, Plaintiff Corbett purchased Pharmavite's Vitamin

5   E products in various doses.  During this entire time, Plaintiff Corbett purchased

6   Defendant's Vitamin E product solely for its represented heart health benefits.

7   Plaintiff Corbett saw, was exposed to and relied upon  Defendant's representation on

8   the front of the label – that the product "Helps Maintain a Healthy Heart" – and it

9   was this representation that caused Plaintiff to purchase and continue to purchase

10  Defendant's Vitamin E product during the years that she purchased the products.

11  Plaintiff believes that she made most, if not all, of her purchases of Defendant's

12  products at a Rite Aid store near where she resided in Queens, New York.  During

13  this time period she believes that she paid approximately $10 for each purchase. The

14  Vitamin E Plaintiff Corbett purchased did not and could not help maintain her heart

15  health as represented because, as discussed herein, the vast weight of scientific

16  evidence and the consensus in the scientific community is that Vitamin E

17  supplements do not provide any heart health benefits.  As a result, Plaintiff Corbett

18  suffered injury in fact and lost money.  Had Plaintiff Corbett known the truth about

19  Pharmavite's misrepresentations and omissions, she would not have purchased

20  Defendant's Vitamin E product.

21          28.    Defendant Pharmavite LLC, is a limited liability company organized

22  and existing under the laws of the State of California.  Pharmavite's headquarters is

23  at 8510 Balboa Boulevard, Mission Hills, California 91325.  From its headquarters

24  in Mission Hills, California, Pharmavite manufactures, distributes, markets and sells

25  the Vitamin E products to consumers nationwide and created the deceptive heart

26  health representation which it caused to be disseminated to consumers nationwide.

27

28

**FACTUAL ALLEGATIONS**

29.    Pharmavite manufactures, distributes, markets and sells nationwide Vitamin E dietary supplements under its brand name "Nature Made".  They are: (1) Natural Vitamin E 400 IU d-Alpha; (2) Vitamin E 400 IU dl Alpha; (3) Vitamin E 400 IU Water Solubilized; (4) Vitamin E 1000 IU dl Alpha; and  (5) Vitamin E 200 IU dl Alpha.

30.    Pharmavite's Vitamin E products are sold in virtually every major food, drug, and mass retail outlet in the country.  The Vitamin E products are available in 60, 100, 180 and 300 count bottles retailing for between $13 and $30.  The following are screen shots of the Products:



31.    Throughout the relevant time period, Pharmavite has consistently conveyed the message to consumers throughout the United States that its Vitamin E products "help[] maintain a healthy heart," simply by taking the recommended daily dosage.  They do not.  Pharmavite's heart health representation is false, misleading and deceptive.

32.    Pharmavite represents that the claimed heart health benefit is achieved from the Products' only purported active ingredient - Vitamin E.  Vitamin E is a fat-soluble nutrient found in a variety of foods including, nuts, seeds and green leafy vegetables.  In the 1980s and 1990s, because Vitamin E was found to slow down the

oxidation of LDL cholesterol in a test tube setting (e.g. *in vitro* testing) it, along with certain other vitamins such as C and D, was coined an antioxidant.  That Vitamin E carries an "antioxidant" label does not, however, mean that it provides any health benefits.  In fact, there is little known about how Vitamin E and other purported antioxidants actually work in the human body.

33.   "Basic science" studies (e.g. *in vitro*, *in vivo*, and animal studies) conducted decades ago have led to hypotheses, yet to be proven in humans, that Vitamin E's purported antioxidant properties might provide a whole host of health benefits.  It is recognized by experts in the field, however, that such "basic science" studies only create hypotheses that need to be tested and do not constitute scientific substantiation that Vitamin E provides *any* of these health benefits. Basic science studies do not constitute proof that a substance works in humans.

34.   The popularity of Vitamin E and sales of the supplement got an additional boost when, in the early 1990s, "observational studies" reported a perceived relationship between the intake of Vitamin E and the prevention of cardiovascular disease.   As a result of those studies – and the commonly held perception at the time that Vitamin E supplements were safe – there was a rapid increase in use of Vitamin E supplements.

35.   However, like basic science studies, observational studies (also known as "epidemiological or population studies") are not considered by experts in the field to constitute adequate proof of cause and effect in human beings.  Like basic science studies, observational studies can only create hypotheses and do not constitute scientific substantiation that Vitamin E provides any heart health benefits.  Among other things, observational studies cannot control for confounding factors such as whether the subjects taking Vitamin E were leading healthier lifestyles.  As a result, as with basic science studies, observational studies are deemed by experts in the field to provide hypotheses about potential effects which then must be tested through

RCTs.

36.    The only accepted form of scientific evidence recognized by experts in the field for determining any heart or other human health benefit provided by a substance such as Vitamin E is through RCTs.

37.    Since the mid–1990s, Vitamin E has been the subject of numerous, large scale–RCTs, making it one of the most tested substances ever.  To date, there have been more than 25 large long–term RCTs or meta–analyses published, involving collectively over 200,000 subjects.

38.    The theory/hypothesis that Vitamin E supplements may provide heart health benefits has been discredited fully by this scientific research.  Instead, the conclusions from the large randomized clinical trials have been consistent that Vitamin E supplementation provides no heart health benefits, because these studies demonstrated that Vitamin E supplements were no better than placebo in affecting the markers for heart health, such as reducing the risk for cardiovascular disease and its associated outcomes including heart attacks, stroke, or mortality.  In other words, numerous large scale RCT's, making Vitamin E supplements one of the most studied substances ever, have established that Vitamin E supplements **do not "help maintain a healthy heart."**

39.    Representative examples of studies concluding that Vitamin E supplementation does not provide heart health benefits include: Sesso, H.D., et al., *Vitamins E and C in the Prevention of Cardiovascular Disease in Men, The Physicians' Health Study II Randomized Controlled Trial*, 300(18) JAMA 2123–33 (Nov. 2008) (concluding that long term Vitamin E supplementation does not prevent cardiovascular events in healthy middle–aged and older men and concluding with the recommendation that persons not take Vitamin E supplements); Lee, I–Min, et al., *Vitamin E in the Primary Prevention of Cardiovascular Disease and Cancer. The Women's Health Study: A Randomized Controlled Trial*, 294(1) JAMA 56–65 (July

2005) (concluding that Vitamin E supplementation provided no heart health benefits in healthy women and recommending that women not take Vitamin E supplements); Lonn, E., et al., *Effects of Long–Term Vitamin E Supplementation On Cardiovascular Events And Cancer: A Randomized Controlled Trial*, 293(11) JAMA 1338–47 (Mar. 2005) (concluding that long-term Vitamin E supplementation does not prevent cardiovascular events, and in fact, may increase the risk for heart failure and recommending not taking Vitamin E supplements); Arnold, J., et al., *Prevention of Heart Failure in Patients in the Heart Outcomes Prevention Evaluation (HOPE) Study*, 107 Circulation J. 1284–290 (Feb. 2003) (concluding that participants taking 400 IU/day of Vitamin E experienced no fewer cardiovascular events or hospitalizations for heart failure or chest pain than participants taking a placebo); Chae C., Albert C., Moorthy, MV, Lee I., Buring, J., *Vitamin E Supplementation and the Risk of Heart Failure in Women*, Circulation: Heart Failure, 5:176 Journal of the American Heart Association 182 (2012) (concluding that "at the present time, the cumulative evidence to date does not support the use of Vitamin E supplementation to reduce the risk of cardiovascular diseases").[6]  These large scale and long term RCTs conclusively demonstrate that Vitamin E supplementation provides no heart health benefits.  That the results of these large scale/long term studies showed that Vitamin E supplements were no better than placebo demonstrate Defendant's heart health representations are false, misleading or deceptive.

40.    Numerous meta-analyses – which follow accepted statistical protocols to combine the results of multiple RCTs – have likewise concluded that Vitamin E supplements do not provide heart health benefits.  Additionally, those meta-analyses

---

[6] Consistent with the forgoing allegations regarding the hypotheses presented by basic science and observational studies, each of these studies, in prefatory statements, noted the results of the basic science or observational studies as background for why they were conducting their particular RCT.  Ultimately, the RCTs did not support the results of the observational studies.

indicate that people who take a dosage of more than 15mgs of Vitamin E supplements are more likely to die than those taking a placebo. *See* Miller ER 3rd, Pastor–Barriuso R, Dalal D et al., *Metaanalysis: High–Dosage Vitamin E Supplementation May increase all–cause mortality*, Ann Intern Med 2005; 142(1):37–46; Bjelakovic G, Nikolova D, Gluud LL, Simonetti RG, Gluud C., *Mortality in randomized trials of antioxidant for primary and secondary prevention: systematic review and meta–analysis*, JAMA Feb 28 2007; 297(8):842–857; Bjelakovic G, Nikolova D, Gluud C., *Meta-Regression Analyses, Meta-Analyses, and Trial Sequential Analyses of the Effects of Supplementation, with Beta-Carotene, Vitamin A, and Vitamin E Singly or in Different Combinations on All-Cause Mortality: Do We Have Evidence for Lack of Harm?* PLOS ONE September 2013: Vol. 8, Issue 9, e74558.

41. Furthermore, in analyzing the endpoint "all-cause mortality" which is what the above referenced meta-analyses did, they were evaluating whether Vitamin E supplementation provided any long-term health benefits. Even if one were to ignore or contest the findings regarding whether Vitamin E supplementation above 15 mg actually increases all-cause mortality, the fact is the Bjalakovic 2013 study, the most all-inclusive study of Vitamin E supplementation to date, concludes that any further studies attempting to show that Vitamin E supplementation might provide any general health benefits such that it might decrease all-cause mortality would be futile. Even meta-analyses that conclude that Vitamin E supplementation has no effect on all-cause mortality still conclude that Vitamin E supplementation has been definitively proven to provide no overall general health benefits (e.g., such as the hypothesis that since Vitamin E the nutrient is an antioxidant, Vitamin E supplements might provide some generalized health benefits).

42. As such, in addition to being proven to not provide any heart health benefits (the false lure that Defendant uses to entice consumers to purchase its products at the point of purchase), the products Defendant sells have been proven

worthless for providing any overall health benefits and have been proven to pose the risk of harm.  As such, for calculation of damages purposes, Defendant's products are worthless and Plaintiff and the class are entitled to a full refund of the purchase price that they paid for these products.

43.    Since the last of the large scale long term studies showed that Vitamin E supplementation caused a statistically significant increase (17%) in the incidence of prostate cancer in men over 50 (the "Select" study), there have been no other large scale long term RCTs conducted regarding whether Vitamin E supplements like those sold by Defendant may provide any health benefits.  In short, the book is closed on the question of Vitamin E supplementation.  The scientific evidence and the overwhelming consensus in the scientific community is that other than the few who have rare deficiency conditions,  Americans should not and do not need to take Vitamin E supplements – that, at best, they are superfluous and at worst are harmful.

44.    In light of the consistent scientific evidence, well-regarded science organizations also have uniformly stated that Vitamin E supplementation does not provide any cardiovascular or heart health benefits.  The American Heart Association has released science advisories, including one in 2004, concluding that "scientific data do not justify the use of antioxidant vitamin supplements for CVD [cardiovascular disease] risk reduction."[7]  In reaching its conclusion based upon review of the RCTs, the AHA also recognized that the "positive findings from observational studies with regard to vitamin E supplementation and lower rates of CVD may be a reflection of the generally healthy lifestyles and dietary intakes of supplement users" rather than any true causal effect.  *Id.*  Consequently, the AHA stated that it did not recommend people take Vitamin E supplements.

45.    Mayo Clinic researchers reached the same conclusion upon evaluating

---

[7] American Heart Association Science Advisory on Antioxidant Vitamin Supplements and Cardiovascular Disease *available at* http://circ.ahajournals.org/content/110/5/637.full.

the history of studies of Vitamin E supplements: "The bottom line is that even though initial laboratory studies, animal studies and population research into the health benefits of vitamin E looked promising, the clinical trial findings — which provide the best form of evidence — didn't bear that out. Instead, they uncovered health risks that make it unwise to take separate vitamin E supplements."[8]

46.     Despite the overwhelming evidence the Products do not help maintain a healthy heart, each and every Product package and label repeatedly emphasizes that the Products "help[] maintain a healthy heart."   Each and every consumer who purchases these Products is exposed to this deceptive heart health representation, which appears prominently and conspicuously on the front of each bottle and is repeated again on the back as follows:

Front                                             Back

    

***The Impact of Pharmavite's Wrongful Conduct***

47.     Despite the scientific evidence that Vitamin E supplementation does not

---

[8] Mayo Clinic Medical Edge Newspaper Column, *Possible Risks Associated with Taking Vitamin E Supplements*, March 18, 2011 *available at* http://www.mayoclinic.org/medical–edge–newspaper–2011/mar–18a.html.

help maintain heart health, Pharmavite continues to unequivocally convey through its advertising and labeling one uniform message:  its Vitamin E products "help[] maintain a healthy heart."

48.    As the manufacturer and distributor of the Vitamin E products, Pharmavite possesses specialized knowledge regarding the content and effect of the ingredients contained in its Products and is in a superior position to learn of the effects – and has learned of the effects – its Products have on consumers.

49.    Plaintiff and Class members have been and will continue to be deceived or misled by Pharmavite's deceptive heart health representation.  Plaintiff purchased and consumed the Vitamin E Products during the Class period and in doing so, read and considered the Products' labels and based her decision to buy the Products on the heart health representation. Pharmavite's heart health representation was a material factor in influencing Plaintiff's decision to purchase and consume the Products.  Plaintiff would not have purchased the Products had she known that Pharmavite's heart health representation was false and misleading and that competent and reliable scientific evidence demonstrates that Vitamin E does not help maintain heart health.

50.    As a result, Plaintiff and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Pharmavite's representations, helped maintain heart health, when, in fact, they do not.  Furthermore, the vast weight of scientific evidence shows that Vitamin E supplementation does not provide any other long-term general health benefits –when the results of clinical trials involving Vitamin E supplements are combined they show that either (1) Vitamin E supplementation causes harm by increasing the rate of all-cause mortality in those who take them, or (2) provide no general health benefits.

51.    Pharmavite, by contrast, reaped enormous profits from its false

marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

52.    Plaintiff Corbett brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of California consumer protection laws:

> **Nationwide Class Action**
> All consumers who, within the applicable statutes of limitations, purchased Pharmavite's Vitamin E Products in the United States.
>
> Excluded from the Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

In the alternative, if the Court does not certify a nationwide class, Plaintiff Corbett brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of a Multi-state class action minus those states that the Court finds, under the facts of this case, should not be included in this class action. Excluded from this Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

53.    In the alternative, Plaintiff Corbett brings this action on behalf of herself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of California consumer protection laws and the New York State consumer protection laws:

/ / /

/ / /

**California and New York Class Action**

All consumers who, within the applicable statute of limitations period, purchased Pharmavite's Vitamin E products in California and New York.

Excluded from this Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

54. ***Numerosity.*** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class(es) contain thousands of purchasers of the Vitamin E products who have been damaged by Pharmavite's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

55. ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Pharmavite's heart health representations are misleading, or objectively reasonably likely to deceive;

(b) whether Pharmavite's alleged conduct violates public policy;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Pharmavite engaged in false or misleading advertising;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f) whether Plaintiff and Class members are entitled to other appropriate remedies, including damages, corrective advertising and injunctive relief.

56. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Pharmavite's deceptive heart health

representation that accompanied each and every bottle of Vitamin E.  Plaintiff is also advancing the same claims and legal theories on behalf of herself and all members of the Class.  Plaintiff has standing to advance these claims because Pharmavite is headquartered in California; created and disseminated the deceptive heart health representation nationwide from its California headquarters; and manufactured, distributed, marketed, and/or sold its Vitamin E products from its California headquarters.

57. ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

58. ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Pharmavite.  It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

59.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Pharmavite from engaging in the acts described, and requiring Pharmavite to provide full restitution to Plaintiff and Class members.

60.     Unless a Class is certified, Pharmavite will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Pharmavite will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

61.     Pharmavite has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*
**(Applicable to the Nationwide, Multi-State Class, or Alternatively, to the California-Only Class)**

62.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

63.     Plaintiff Corbett brings this claim individually, and on behalf of the California-only Class, and on behalf of the Nationwide and Multi-State Class.

64.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Pharmavite's conduct because she purchased the Product in reliance on Pharmavite's heart health representation, but did not receive a Product that maintains heart health.  The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Pharmavite committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the

meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*

65.    Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

66.    Pharmavite's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Pharmavite engaged in false advertising, misrepresented and omitted material facts regarding its Vitamin E products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

67.    As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Pharmavite's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq*.

68.    There were reasonably available alternatives to further Pharmavite's legitimate business interests, other than the conduct described herein.

69.    Business & Professions Code §17200, *et seq*., also prohibits any "fraudulent business act or practice."

70.    Pharmavite's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*.

71.    Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

72.     As a result of its deception, Pharmavite has been able to reap unjust revenue and profit.

73.     Unless restrained and enjoined, Pharmavite will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

74.     Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class as a result of unfair competition, an injunction prohibiting Pharmavite from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –Civil Code §1750** *et seq.*
**(Applicable to the Nationwide, Multi-State Class, or Alternatively, to the California-Only Class)**

75.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

76.     Plaintiff Corbett brings this claim individually and on behalf of the California-only Class, and on behalf of the Nationwide and Multi-State Class.

77.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a "consumer" as defined by California Civil Code §1761(d).  Pharmavite's Vitamin E products are "goods" within the meaning of the Act.

78.     Pharmavite violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Vitamin E products:

(5)     Representing that [the Vitamin E products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

                          *          *          *

(7)    Representing that [the Vitamin E products are] of a particular standard, quality or grade . . . if [they are] of another.

\*        \*        \*

(9)    Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

(16)    Representing that [the Vitamin E products have] been supplied in accordance with a previous representation when [they have] not.

79.    Pharmavite violated the Act by representing and failing to disclose material facts on the Products' labels and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

80.    Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Pharmavite and for restitution and disgorgement.

81.    Pursuant to §1782 of the Act, Plaintiff notified Pharmavite in writing by certified mail of the particular violations of §1770 of the Act and demanded that Pharmavite rectify the problems associated with the actions detailed above and give notice to all affected consumers of Pharmavite's intent to so act.  A copy of the letter is attached hereto as Exhibit A

82.    If Pharmavite fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages as appropriate.

83.    Pharmavite's conduct is fraudulent, wanton and malicious.

84.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing this action has been commenced in the proper forum.

## COUNT III
### Violations of the New York General Business Law § 349
### (Applicable to the New York-Only Class)

85.    Plaintiff Corbett repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

86.    Plaintiff Corbett brings this claim individually and on behalf of the New York-only Class.

87.    Pharmavite's actions alleged herein constitute unlawful, unfair, and deceptive business practices.  Those actions include misrepresenting that Nature Made Vitamin E "helps maintain a healthy heart," leading consumers to incorrectly believe Nature Made Vitamin E would reduce their risk of cardiovascular disease or otherwise maintain a healthy heart.

88.    Plaintiff Corbett is not challenging any statement on Pharmavite's labels required by the FDA.

89.    Pharmavite's conduct constitutes acts, uses and/or employment by Pharmavite or its agents or employees of deception, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods in violation of Section 349 of New York's General Business Law.

90.    Pharmavite's deceptive conduct was generally directed at the consuming public.

91.    Pharmavite's unfair and deceptive trade acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiff and other members of the New York-only Class.

92.     Pharmavite's violations of Section 349 of New York's General Business Law have damaged Plaintiff and other New York-only Class members, and threaten additional injury if the violations continue.

93.     Pharmavite's deceptive conduct has caused harm to New York-only Class members in that they purchased Nature Made Vitamin E when they otherwise would not have or paid more for Nature Made Vitamin E than they otherwise would have, absent Pharmavite's deceptive conduct.

94.     Plaintiff Corbett, on her own behalf and on behalf of the New York-only Class, seeks damages, injunctive relief, including an order enjoining Pharmavite's Section 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY Gen. Bus. Law § 349.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class(es) as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Pharmavite's revenues to Plaintiff and the proposed Class members;

D.     Awarding injunctive relief as permitted by law or equity, including enjoining Pharmavite from continuing the unlawful practices as set forth herein;

E.     Awarding statutory and punitive damages, as appropriate;

F.     Ordering Pharmavite to engage in a corrective advertising campaign;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: August 7, 2015

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.


 /s/ Patricia N. Syverson
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
eryan@bffb.com
Patricia N. Syverson (203111)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
psyverson@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com

BOODELL & DOMANSKIS, LLC
Stewart M. Weltman (*To Be Admitted Pro Hac Vice*)
sweltman@boodlaw.com
Max A. Stein (*To Be Admitted Pro Hac Vice*)
mstein@boodlaw.com
353 North Clark St, Suite 1800
Chicago, Illinois 60654
sweltman@boodlaw.com
Telephone:   (312) 938-1670

JOHNSON & JOHNSON LLP
Jordanna Thigpen (232642)
jthigpen@jjllplaw.com
439 N. Canon Drive, Suite 200
Beverly Hills, CA 90210
Tel (310) 975-1080
Fax (310) 975-1095

NYE, PEABODY, STIRLING, HALE & MILLER,
LLP
Jonathan D. Miller (SBN 220848)
jonathan@nps-law.com
Alison M. Bernal (SBN 264629)
alison@nps.com
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone:  (805) 963-2345
Facsimile:  (805) 563-5385

GOLDMAN SCARLATO & PENNY P.C.
Brian D. Penny (*To Be Admitted Pro Hac Vice*)

penny@gskplaw.com
Laura K. Mummert (*To Be Admitted Pro Hac Vice*)
mummert@gskplaw.com
101 East Lancaster Ave., Suite 204
Wayne, Pennsylvania 19087
Telephone:  (484) 342-0700

LEVIN FISHBEIN SEDRAN & BERMAN
Howard J. Sedran *(To Be Admitted Pro Hac Vice)*
510 Walnut Street
Philadelphia, Pennsylvania 19106
hsedran@lfsblaw.com
Telephone: (215) 592-1500

Attorneys for Plaintiff
*LAURA CORBETT, On Behalf of Herself and All Others Similarly Situated*